UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 2:17-CR-17-TAV-CRW-1 |
| LUKE HAMILTON TRENT, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 256]. The Federal Defender Services of Eastern Tennessee filed a "Notice of First Step Act Review" notifying the Court of its determination not to file additional pleadings to supplement plaintiff's motion [Doc. 232], and the government responded in opposition [Doc. 286]. Since filing the motion, defendant replied to the government's response [Doc. 291] and has submitted multiple supplements in support of his motion [Docs. 259, 288, 292, 293, 304]. For the reasons set forth more fully below, defendant's motion [Doc. 256] is **DENIED.**

**I.    Background**

On December 4, 2017, defendant pleaded guilty to conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) [Docs. 103, 135]. The presentence investigation report ("PSR") calculated defendant's guideline range as 292 to 365 months'

imprisonment [PSR ¶ 84]. The PSR also classified defendant as a career offender under § 4B1.1(b) of the Guidelines [*Id.* ¶ 62].

On April 13, 2018, the Court sentenced defendant to the mandatory minimum sentence of 240 months' imprisonment, followed by 10 years of supervised release [Doc. 215]. According to the Bureau of Prisons' website, defendant is presently scheduled for release on March 28, 2033. Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed July 19, 2024).

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in § 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 256].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and

3

do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III. Analysis

#### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government concedes that defendant has satisfied this requirement [Doc. 286, p. 2]. Thus, the Court will evaluate defendant's motion according to the three-step test explained above.

#### B. Extraordinary and Compelling Reasons

Turning to whether defendant has set forth extraordinary and compelling grounds for relief, the Court first notes that the Sixth Circuit previously held that "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement of § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). This was so because the applicable policy statement,

4

United States Sentencing Guideline § 1B1.13, as written at the time, did not contemplate inmate-filed motions for compassionate release, but instead, was limited to circumstances where the Bureau of Prisons filed a motion on an inmate's behalf. *Id.* at 1109–10; *see also* U.S.S.G. § 1B1.13 (2018).

However, the Sentencing Commission amended the policy statement in § 1B1.13, effective November 1, 2023, to encompass inmate-filed motions for compassionate release. U.S.S.G. § 1B1.13 (2023). It thus appears that the Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to inmate-filed motions for compassionate release is no longer consistent with the Guidelines. *See United States v. Nash*, No. 23-3635, 2024 WL 1979067, at *3 (6th Cir. Apr. 30, 2024) (noting the amendment to § 1B1.13 and stating that "prior to [the date of amendment], no guideline policy statement applied to compassionate-release motions brought by defendants, and a district court could deny a defendant-filed motion without reference to any policy statement"); *see also United States v. Ringgold*, No. ELH-17-232, 2023 WL 7410895, at *5–6 (D. Md. Nov. 8, 2023) ("[I]t appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)."). However, "[t]he new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release." *United States v. Davis*, No. 3:20-cr-16, 2023 WL 7356579, at *2 (W.D. N.C. Nov. 7, 2023).

5

As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," and discusses when the medical circumstances of the defendant, the age of the defendant, the family circumstances of the defendant, the defendant's victimization in custody, and other reasons may constitute extraordinary circumstances. U.S.S.G. § 1B1.13(b)(1)–(5). Here, defendant cites the following as extraordinary and compelling grounds warranting his release: (1) his medical problems and associated COVID-19 risk, (2) his parents' health problems and their need for a caregiver, (3) his rehabilitative efforts, (4) the harsh conditions of imprisonment during the COVID-19 pandemic, (5) the sentencing disparity between himself and his co-defendants, and (6) changes in the law that he argues would result in a lower sentence today [*See* Docs. 256, 288, 292].

### i. Defendant's Medical Condition(s)

The policy statement provides four situations when a defendant's medical condition may constitute an extraordinary and compelling reason for release:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory) . . . .

(B) The defendant is—

    (i) suffering from a serious physical or medical condition,

    (ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

6

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)  The defendant presents the following circumstances—

(i)  the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak or infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)  such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1).

Defendant states his "serious chronic Medical Conditions" warrant a reduction in his sentence [Doc. 256, p. 5]. Specifically, he claims his conditions of (1) obesity, (2) high cholesterol, (3) history of smoking, and (4) the "7 mm calcified nodule in [his] Right lung base," in combination with the threat of COVID-19, create a heightened risk of severe illness or death that justifies a reduction in his sentence [*Id.*].

The government responded that the risk of the COVID-19 pandemic is no longer an extraordinary and compelling reason for release, since defendant has access to the COVID-19 vaccine [Doc. 286, p. 4].

Under the final subsection of § 1B1.13(b)(1), defendant's health issues may be extraordinary and compelling grounds for release when combined with the increased risk of contracting, or becoming severely ill from, COVID-19; however, defendant has not

7

adequately established all three requirements of § 1B1.13(b)(1)(D). First, defendant has not established that he is housed at a correctional facility affected by an ongoing outbreak of COVID-19. Records indicate that defendant is housed at Federal Correctional Institution ("FCI") Memphis. Federal Bureau of Prisons' Inmate Locator, www.bop.gov/inmateloc// (last accessed July 24, 2024). The Bureau of Prison's website indicates that there are no open cases of COVID-19 at FCI Memphis, and 648 of 1,001 inmates have been fully vaccinated against COVID-19. "Latest COVID-19 Data," Inmate COVID-19 Data, bop.gov/about/statistics/statistics_inmate_covid19.jsp (last accessed July 24, 2024). Accordingly, it does not appear that there is currently an ongoing COVID-19 outbreak at FCI Memphis, nor has defendant provided any information that such an outbreak is imminent.

Second, even if there was an ongoing or imminent COVID-19 outbreak at FCI Memphis, defendant has not shown that any risk of severe medical complications or death cannot be adequately mitigated in a timely manner. The Center for Disease Control ("CDC") has recognized obesity and a history of smoking as conditions that "can make you more likely to get very sick from COVID-19." "People with Certain Medical Conditions and COVID-19 Risk Factors," COVID-19, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 24, 2024). Thus, defendant's medical conditions could increase his risk of suffering severe medical complications or death from COVID-19.

8

However, the Court notes the Sixth Circuit has previously held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Notably, defendant has provided no specific information about his vaccination status or his access to the COVID-19 vaccine in conjunction with his request for compassionate release. But, presumptively, the COVID-19 vaccine is accessible to defendant, as the Bureau of Prisons has distributed the vaccine throughout its facilities. *See* "COVID-19 Vaccine Guidance," Federal Bureau of Prisons, https://www.bop.gov/resources/health_care_mngmt.jsp (last accessed July 26, 2024).

The Sixth Circuit has found that access to the vaccine is sufficient to determine the defendant can mitigate the risk of medical complications from contracting the virus. *Lemons*, 15 F.4th at 751. Therefore, given defendant's access to the COVID-19 vaccine, the Court cannot find that defendant's risk of severe medical complications associated with contracting COVID-19 cannot be adequately mitigated in a timely manner. Accordingly, even if defendant had established that that there was an ongoing or imminent COVID-19 outbreak at FCI Memphis, he nonetheless has not established that such constitutes an extraordinary and compelling ground for release.

### ii. Defendant's Family Circumstances

Next, the amended policy statement provides that the following may be extraordinary and compelling reasons for release:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. . . . .

U.S.S.G. § 1B1.13(b)(3).

In his motion for compassionate release, defendant argues that he is entitled to a sentence reduction so he can be a caregiver for his mother, since he is "the sole person… [who] may care for her" and "no one else is available at this point in time" [Doc. 256, p. 7]. Defendant also claims his father needs a caregiver [Doc. 259, p. 2]. To substantiate these claims, defendant attached medical records and notes from his parents' healthcare providers [*See* Docs. 256, 259]. Specifically, these records claim defendant's mother suffers from chronic obstructive pulmonary disease ("COPD"), COVID-19 related pneumonia, and a myocardial infraction, and his father suffers from emphysema, heart disease, high blood pressure, degenerative disc and joint disease, and eye issues [*Id.*].

The government responds that defendant has not shown his parents are incapacitated, as is required for family circumstances to rise to the level of an extraordinary and compelling reason for compassionate release [Doc. 286, pp. 4–5].

10

In his reply, defendant asserts that "no one else is caring for his parent's [sic] and his Mother continues to fall and had a stroke several months ago" [Doc. 291, p. 3]. Defendant also supplements his motion with a letter from his mother, in which she states that "the last 4 months have been very hard" and "my husband and I can no longer do things that we have always done for ourselves, like cooking, mopping, sweeping, laundry, etc." [Doc. 288, p. 1]. Further, defendant's mother states she and her husband need defendant to live with them full-time [*Id.* at 2]. Defendant's mother submitted another letter on March 27, 2024, stating she "can't clean nor cook anymore" and that she "can't even walk outside without falling or getting sick" [Doc. 293, p. 1]. She also states that her husband now suffers from a concussion and first-stage dementia [*Id.*]. Lastly, defendant submitted his father's medical eye records, which he claims prove his father cannot drive due to him "going blind" [Doc. 304].

Although defendant argues his family circumstances support his motion for compassionate release, defendant has not established that these circumstances are extraordinary and compelling reasons warranting relief.

First, defendant fails to provide evidence adequately substantiating his claim that his parents are incapacitated, as required by U.S.S.G. § 1B1.13(b)(3)(C). "Incapacitation" within the meaning of § 1B1.13(b)(3) typically means that the individual is "completely disabled" and "cannot carry on any self-care" or "is totally confined to a bed or chair." *See United States v. Steele*, No. 1:20-cr-13-4, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) (quoting *United States v. Jones*, No. CR 13-252, 2021 WL 1060218, at *10 (W.D.

11

Pa. Mar. 18, 2021)). While defendant provides letters from his parents' healthcare providers [Doc. 259, pp. 6–7], these notes fail to show that defendant's parents are "incapacitated." Although the providers state the conditions defendant's mother and father suffer from "make it a daily struggle to accomplish basic needs in or around the house" [Doc. 259, p. 6], a medical professional's claim that defendant's presence "would be beneficial" [*Id.*] is not enough for the Court to find defendant's parents to be incapacitated. *United States v. Crider*, No. 614CR00044GFVTHAI1, 2024 WL 1291492, at *2 (E.D. Ky. Mar. 26, 2024) (finding a medical professional's opinion that defendant's presence would be "beneficial" insufficient to establish incapacitation).

Also, the general claims regarding defendant's mother, such as her need for help because she "can't clean nor cook anymore" and is having trouble walking [Doc. 293], fail to sufficiently establish that defendant's parents are incapacitated. *United States v. Wendel*, No. 3:19-CR-219, 2024 WL 2748493, at *2 (N.D. Ohio May 29, 2024) ("Ms. Wendel's general assertion she is unable to 'manage her home' is not sufficient to demonstrate that she is incapacitated."). Moreover, the Court notes that "parents' aging-related health problems that fall short of incapacitation are not 'extraordinary and compelling circumstances' that justify compassionate release[.]" *Steele*, 2024 WL 1928945, at *3. Thus, defendant has not establish his family circumstances are an extraordinary and compelling reason warranting relief.

Secondly, even if the Court presumes defendant's mother and father are incapacitated for purposes of § 1B1.13(b)(3)(C), defendant provides no detail as to why

12

other family members could not assist in caring for them. Although defendant alleges that he is the "sole person" who can care for his parents since "no one else is available" [Doc. 256, p. 7], defendant does not address why other family members cannot care for his parents. Indeed, according to his PSR, defendant has three siblings, all of whom reside in East Tennessee, like defendant's parents [PSR ¶ 71]. Without proving defendant is the *only* available caregiver for his parents, his family circumstances do not warrant his compassionate release. *United States v. Steele*, No. 1:20-CR-13-4, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) ("[Defendant] has a brother and a sister, either of whom presumably could care for his mother. So [defendant] has not shown he is her sole available caregiver.").

While the Court recognizes that defendant's family may experience hardships in his absence, "[i]ncarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, No. 1:17-cr-103, 2020 WL 3502819, at *3 (S.D. Ohio June 29, 2020). Therefore, "[i]t is an unfortunate reality that family members commonly experience hardship during a defendant's incarceration and that defendants wish to reunite with them." *United States v. Munsey-Killian*, No. 2:15-CR-107, 2023 WL 1797902, at *3 (E.D. Tenn. Feb. 7, 2023). Defendant's family circumstances, however, do not rise to the level of extraordinary and compelling reasons warranting compassionate release.

13

### iii. Defendant's Rehabilitative Efforts

Defendant also argues, for the first time in his reply,[1] that his "meritorious post-rehabilitation efforts" justify a reduced sentence [Doc. 291, p. 4]. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). The policy statement acknowledges that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). Accordingly, while the Court recognizes that defendant has taken some steps to rehabilitate himself, such efforts alone statutorily cannot constitute extraordinary and compelling grounds for release.

### iv. Defendant's Conditions of Imprisonment

Defendant also appears to argue in his reply brief that "the harsh conditions of confinement through [the] COVID-19 pandemic" constitute an extraordinary and compelling ground for compassionate release [Doc. 291, pp. 5–6]. The catch-all provision of the policy statement indicates that a Court may find extraordinary and compelling reasons when "[t]he defendant presents any other circumstance or combination of

---

[1] "It is well-settled that a movant cannot raise new issues for the first time in a reply brief[.]" *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012); *see also Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."). Further, "the Local Rules of this District … advise that '[a] reply brief shall ... directly reply to the points and authorities contained in the answering brief.'" *Dunfee v. Finchum*, 132 F. Supp. 3d 968, 975 (E.D. Tenn. 2015) (citing E.D. Tenn. L.R. 7.1(c)). However, considering the defendant's pro se status the Court will briefly consider the issues defendant raises in his reply brief.

14

circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

The Court does not find that prison lockdown conditions during the COVID-19 pandemic, which were instituted to protect the health and safety of inmates, constitutes an extraordinary and compelling ground for compassionate release comparable to those listed in § 1B1.13(b)(1)–(4). The Court notes that "[g]eneralized statements about the conditions of confinement do not constitute compelling reasons for compassionate release." *United States v. Allard*, No. 5:00-110, 2022 WL 11859598, at *2 (E.D. Ky. Oct. 20, 2022) (internal quotation marks omitted). And, of course, COVID-19 lockdown conditions cannot be said to be "extraordinary," at least as to defendant specifically, as the same conditions were experienced by all inmates in defendant's facility, and similar conditions were experienced by inmates in facilities across the country. *See id*. (stating that "because all the inmates at [defendant's facility] presumably suffer from the same allegedly poor treatment, those conditions do not provide a reason why [defendant] specifically should be released").

### v. Defendant's Sentencing Disparity

Defendant also asserts in his reply brief that the "gross disparity in sentencing amongst co-defendants" resulted in "an unwarranted sentencing disparity . . . which weighs in favor of a reduced federal sentence" [Doc. 291, pp. 4–5].

Although this Court may "consider sentencing disparities among co-defendants when assessing whether there are extraordinary and compelling reasons to support release,"

15

this consideration is limited in its scope. *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *7 (W.D. Tenn. June 8, 2020). As a baseline, "identifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing factual developments," specifically changes in "the defendant's personal circumstances." *United States v. Hunter*, 12 F.4th 555, 569 (6th Cir. 2021) (emphasis omitted). As such, the Court cannot "label[] the facts that existed at sentencing 'extraordinary and compelling'" when revisiting statutory sentencing factors. *Id.*

Here, the Court based defendant's sentence on facts present at the time of sentencing. And because defendant fails to present any facts or circumstances that have changed since his original sentencing and would impact the § 3553(a) sentencing factors, the Court cannot consider the sentencing disparity between defendant and his co-defendants as an "extraordinary and compelling" reason to reduce his sentence. Further, if the Court did determine a disparity apparent at the time of sentencing to be an "extraordinary and compelling" reason to lower defendant's sentence, this would "nullif[y] the extraordinary-and-compelling-reasons requirement and transform[] § 3582(c)(1)(A) into an unbounded resentencing statute." *Id.* Therefore, seeing no changed circumstances relating to defendant's sentencing, the sentencing disparity between defendant and his co-defendants cannot constitute extraordinary and compelling grounds for release.

### vi. Changes in the Law

Defendant further claims in his reply that, "as the law stands today," he would not be subject to a mandatory minimum 20-year sentence, so his sentence should be reduced

16

[Doc. 291, p. 5; *see also* Doc. 292, pp. 3–4].  Defendant references a 2022 memorandum issued by Attorney General Merrick Garland that applies to drug offenses.  Merrick Garland, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases* (December 16, 2022), https://perma.cc/XU7X-M7LQ.  Specifically, the memorandum lists four criteria prosecutors should consider when a defendant may be subject to a Title 21 mandatory minimum sentence.  When all four criteria are met, the memorandum instructs prosecutors to "decline to charge the quantity necessary to trigger a mandatory minimum sentence." *Id.*

Although defendant was convicted of a Title 21 offense, this policy does not apply retroactively.  Rather, it "appl[ies] both to future prosecutions and to some currently pending." *United States v. Hudson*, No. 23-1341, 2024 WL 140550, at *2 (6th Cir. Jan. 12, 2024) (finding a district court did not abuse its discretion in denying a defendant's request to withdraw his guilty plea after Attorney General Garland released his memorandum changing drug charging policies).  Further, the memorandum itself stipulates,

> The policies contained in this memorandum, and internal office procedures adopted pursuant thereto, are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States.

Merrick Garland, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*.  Therefore, given the non-binding and non-retroactive nature of

the memorandum, defendant is not entitled to a lower sentence based on Attorney General Garland's new charging policies.

## IV. Combination of Factors

The Court has fully considered all of defendant's purported extraordinary and compelling grounds for release individually, as discussed *supra*, and in combination with one another. However, the Court finds that, even in combination, defendant has not alleged extraordinary and compelling grounds for compassionate release. Accordingly, his request for compassionate release [Doc. 256] is **DENIED**.

### A. Section 3553(a) Factors

Alternatively, the Court finds that, even if defendant had established extraordinary and compelling grounds for relief, the § 3553(a) factors weigh against granting compassionate release.

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed,

18

the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *Id*.

The § 3553(a) factors weigh against granting defendant's motion for compassionate release. Specifically, the Court finds defendant was convicted of a serious drug crime, and given defendant's career offender status and extensive criminal history, he faced a guideline imprisonment range of 292 to 365 months [Doc. 198 ¶ 84]. The Court took all of this information, as well as all the other evidence of record, into account in fashioning a sentence which was sufficient, but not greater than necessary, to reflect, among other things, the serious nature of the offense, the need to promote respect for the law and provide just punishment, the need for adequate deterrence both as to this defendant and to the public at large, and to protect the public from further crimes by this defendant. Taking all relevant evidence into account, the Court imposed a below guideline range sentence of 240 months [Doc. 215].

Considering the serious nature of the instant drug crime, coupled with defendant's extensive criminal history, which includes crimes such as assault, multiple counts of possession of a Schedule II Controlled substance, and unlawful possession of a weapon during the commission of an offense, the Court finds that the § 3553(a) factors weigh against releasing defendant.

And, as explained above, the Court has considered defendant's medical conditions, family circumstances, rehabilitative efforts, and other grounds discussed, but finds that

these factors do not outweigh the other § 3553(a) factors. Accordingly, on this alternative ground, defendant's motion for compassionate release [Doc. 256] is **DENIED**.

## VII. Conclusion

For the reasons set forth more fully above, defendant's motion [Doc. 256] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE